IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI

IN RE: GRAND SOLEIL-NATCHEZ, LLC            CHAPTER 7

CASE NO: 11-01632-NPO

PETITIONING CREDITORS' RESPONSE TO
MOTION TO DISMISS PETITION FOR
INVOLUNTARY BANKRUPTCY (DK # 34)

The petitioning creditors, Good Hope Construction, Inc. ("Good Hope"), Farmer Electrical Service Company, Inc. ("Farmer") and Ketco, Inc. ("Ketco") (hereinafter sometimes referred to collectively as "Petitioning Creditors"), respond to the motion to dismiss of the alleged debtor, Grand Soleil-Natchez, LLC ("Grand Soleil") as follows:

### I. PROCEDURAL BACKGROUND

1. On May 5, 2011, the Petitioning Creditors filed this involuntary petition for relief against Grand Soleil-Natchez, LLC ("Grand Soleil"). Process was served on Grand Soleil on May 9, 2011.

2. On May 31, 2011, Grand Soleil requested an additional fifteen (15) days in which to answer the petition. The Court granted this motion by order dated June 6, 2011 (Dk #10).

3. On June 6, 2011, the Court scheduled a status conference for June 13, 2011. At the status conference, the Court set a trial on the involuntary petition for July 13 and 14, 2011 (Dk #17).

4. On June 16, 2011, Grand Soleil filed its answer. In its answer, Grand Soleil alleged that it was paying its ongoing operational debts as they came due and that the debts to the petitioning creditors were subject to bona fide dispute. The answer was subsequently amended on June 21, 2011.

5. On June 24, 2011, Grand Soleil filed a motion for continuance of the trial. In its motion, Grand Soleil stated that one of its attorneys had a previously scheduled commitment the week of July 11, 2011, that could not be rescheduled.

6. On June 27, 2011, the Court conducted a hearing on the motion for continuance. At the hearing, the Court agreed to continue the trial on this matter to accommodate counsel for Grand Soleil. The trial is currently scheduled for July 28 and 29, 2011.

7. Surprisingly, on July 15, 2011, one of the dates that Grand Soleil's counsel represented to the Court that he was unavailable, Grand Soleil filed this motion to dismiss the proceedings and filed a motion to require the posting of a bond.[1] This motion is not supported by the evidence and should be denied.

## II. GRAND SOLEIL'S ASSETS AND CLAIMS

8. Grand Soleil asserts that neither Good Hope nor Farmer qualify as petitioning creditors under 11 U.S.C. § 303(b) because both claims are allegedly subject to a bona fide dispute and in any event are secured claims. As such, Grand Soleil requests a dismissal of this involuntary case. Grand Soleil is hopelessly insolvent and not generally paying its debts as they come due. A brief summary of its financial condition as of the petition date is necessary to demonstrate why Grand Soleil's legal arguments are without merit.

9. On June 30, 2011, the Petitioning Creditors took the 30(b)(6) deposition of Grand Soleil. Rick Lindsley, the Chief Financial Officer of Grand Soleil and Kent Hudson, its attorney, both testified as 30 (b)(6) witnesses. Selected portions of the deposition are attached to this motion

---

[1] In fact, after this motion was filed on July 15, 2011, counsel for the Petitioning Creditors spoke with Kent Hudson, counsel for Grand Soleil, at his office in Natchez and learned for the first time that the unavoidable conflict had been cancelled.

as Exhibit A.[2]

## A. Property of Grand Soleil and claims secured thereby.

10. The primary assets of Grand Soleil are three distinct tracts of real property all located contiguous with each other in Natchez, Adams County, Mississippi. The three tracts are described as follows:

(a) the Grand Soleil Hotel Property, (Depo. p. 17) ("Hotel Property"), which is an operating hotel;

(b) the Williams Tract (Depo. p. 17), a tract of partially developed land located below the bluff in Natchez and abutting the Mississippi River ("Williams Tract"), and

(c) the Briars Bed and Breakfast (Depo. p. 17), an antebellum home that is currently not operating ("Briars").

Grand Soleil also owns the hotel equipment and a couple of broken down trams. (Depo. p. 18). The only operating business of Grand Soleil is the Hotel Property, which consists of a hotel, restaurant and bar. (Depo. p. 20). The Briars is leased to a third party who pays no rent. (Depo. p. 78).[3]

The initial idea of the Grand Soleil project involved both a hotel with a dockside casino; however, Grand Soleil could not complete the casino within the time allotted by the gaming commission and lost it license.

---

[2] Grand Soleil refused to produce any documents that it claimed were "available in the public records." Counsel for the Petitioning Creditors is unaware of any such rule that requires a party to go search the public records for documents that may be responsive to request for production of documents that are solely within the custody and control of Grand Soleil.

[3] According to Grand Soleil's testimony, the lease generates no income. In response to the specific question as to what it received on the lease, Grand Soleil stated: "Nothing. They [the tenant] pay the utilities and all the expenses associated with the occupants of the premises." Depo. p. 78.

(Depo. p. 39). Good Hope and Farmer both provided labor and materials used in connection with the renovation and construction of the hotel. Ketco provided advertising services to Grand Soleil.

11. Grand Soleil has a number of deeds of trust and construction liens against its real property, including the construction liens of Good Hope and Farmer. The deeds of trust on each property are described below:

### Hotel Property:

| Secured Party | Amount |
| --- | --- |
| United Mississippi Bank | $ 5,741,046 |
| The Cato Group | $14,500,000[4] |

### Briars:

| Secured Party | Amount |
| --- | --- |
| United Mississippi Bank | $ 5,741,046 |
| The Cato Group | $14,500,000 |

### Williams Tract:

| Secured Party | Amount |
| --- | --- |
| The Cato Group | $14,500,000 |
| Yates Construction | $ 2,900,000 |
| FNB Iola | $ 4,650,000 |
| Gary Stinsky | $ 150,000 |

In summary, there are a total of 5 deeds of trust on the three properties. United Mississippi Bank has a lien on the Hotel Property and the Briars, The Cato Group has a deed of trust that covers all three properties and the remaining deeds of trust are solely on the Williams Tract. The total amount outstanding on these deeds of trust is $27,941,046.

12. Grand Soleil is not paying all of these secured claims as they come due. With respect

---

[4]It is unclear as to the extent and validity of this lien. This issue will have to be determined at a later date.

to the Cato Deed of Trust, in the amount of $14,500,00, Kent Hudson, in his 30(b)(6) capacity, testified about the payment of this deed of trust as follows,:

> Answer: What this note [Cato Group] represents is basically a structured settlement of 3, 4, 5, 6 lawsuits plus disputes over anything and everything that could possibly be disputed as between Grand Soleil and Charles Cato and his various parties, including a resolution of a lot of issues that were before the Gaming Commission, multiple issues.
>
> By Mr. Spencer: All right go ahead.
>
> By Mr. Hudson: The $14,000,000 represents a structure that the Grand Soleil or Big River was to pay basically out of the proceeds of the operations of the casino. When the deal was done, financing was in place and they anticipated that the casino portion would be open within a year. The first payment was $750,000 and like payments as properly set forth there. The financing fell through the payment was not made.
>
> Question by Mr. Spencer: So the installment payments of $750,000 the first was due July 14, 2009, that was not made?
>
> Mr. Hudson: No.
>
> By Mr. Spencer: And the one due - -
>
> By Mr. Hudson: To my knowledge no.
>
> By Mr. Spencer: The July 14, 2010 was not made?
>
> By Mr. Hudson: To my knowledge no.

Depo. pp. 70 and 71.

13.    With respect to the Yates Deed of Trust in the amount of $2,900,000, Mr. Lindsley, the CFO, was not sure if it had matured but did state that it had not been paid:

> Q. How many past due payments are there on that deed trust and how much are the past due payments?
>
> A. The deed of trust - - I mean, its - -
>
> Q. It has matured?

5

> A. We owe $2,900,000. I think it was converted to a note.
>
> Q. So if Yates wanted to, it could foreclose on the project right now because the deed of trust has matured?
>
> A. I am not in a position I can't tell you.
>
> Q. But the $2,900,000 has not been paid.
>
> A. That is correct.

Depo. P. 22.

14. There is some dispute about whether Grand Soleil was current on its payments to United Mississippi Bank; however, the payments required to service that loan are $40,000 a month and Grand Soleil concedes that prior to the filing of the involuntary petition, United Mississippi Bank had published a notice of foreclosure sale with respect to the Briars.

> Q. Are you aware that UMB had filed a notice of foreclosure before May 5th, 2011?
>
> A. I am not -- Right now I'm not aware of the date that that was filed, but I am aware that they did. I read it in the paper.

Depo. p. 32.

15. In its Amended Answer, Grand Soleil asserts that it was current on its debt to its "major secured lender," FNB, on its deed of trust in the amount of $4,650,000. Amended Answer ¶ 3. This statement is misleading at best because Grand Soleil is not paying that debt at all. In fact, Mr. Lindsley, the CFO, admitted that Grand Soleil did not have the funds with which to service that debt.

> Q. Do you have a copy of the promissory note that was signed to the First National Bank?

A. I do not.

Q. Who has that?

A. I believe Mr. Bayba does.

Q. But Grand Soleil is obligated to pay the promissory note?

A. Yes, sir.

Q. Do you know the terms of the promissory note?

A. No, I don't.

Q. As of May 5th, 2001, wsa the promissory note current?

A. I believe it was, but I do not have knowledge of it.

Q. Well, who other than the CFO, would have knowledge of that?

A. Mr. Bayba. I believe that the members pay that note, the members of Big River.

Q. Oh so the Debtor - - the alleged debtor is not paying the note?

A. Correct.

Q. The Alleged Debtor does not have the money to pay the note?

A. Correct.

Depo. pp. 24-25.

### B. Other claims against Grand Solei.

16.     In addition to its secured claims, Grand Soleil is not generally paying its other debts as they come due. Specifically, Grand Soleil has failed to pay its 940 and 941 federal withholding taxes to the Internal Revenue Service. As a result, on April 22, 2011, the Internal Revenue Service filed a Notice of Federal Tax Lien against Grand Soleil in the amount of $257,793.48. A copy of

the Notice of Federal Tax Lien is attached hereto as Exhibit "B" and incorporated herein by reference.

17.  Grand Soleil has failed to pay its ad valorem taxes of its real property that were due January 1, 2011, in the amount of $121,655.84.  Depo p. 81.

18.  Grand Soleil has unpaid state sales taxes of approximately $130,000 about which Mr. Lindsley testified as follows:

> Q.  What kind of state taxes do you have?
>
> A.  Sales and use tax I should say sales tax
>
> Q.  That haven't been paid?
>
> A.  That is correct.
>
> Q.  How much are those?
>
> A.  That would be approximately $130,000.
>
> . . .
>
> Q.  But as the fifth day of May, 2011, you owed $130,000 to the State Tax Commission?
>
> A.  And that's also taking into consideration the May balance, which I am estimating right now what that would, the $130,000. And no payments have been made on those since January 1, 2011.

Depo. pp. 82-83.

19.  In addition to petitioning creditor, Ketco, there are at least three (3) judgments against Grand Soleil: (i) a judgment in favor of Cintas in the amount of $30,851.41 (Depo. p. 83), which judgment has not been paid, (ii) a judgment in favor of Multicom in the amount of $48,830.30, which is subject to a re-payment plan but has not been paid in full as of May 5, 2011, and (iii) a

judgment in favor of Preferred Transport in the amount of $17,210, a portion of which has been paid. Depo. p. 83-84.[5] Ketco's judgment did not include all amounts Grand Soleil owed. Grand Soleil concedes it owes Ketco $12,406.43 of which only $5,949.62 has been reduced to judgment. (Depo. p. 43).

### C. Construction Lien claims against Grand Soleil

20. Attached as Exhibit 3 to the deposition transcript of Grand Solei is the complaint Good Hope filed against Grand Soleil and others in December of 2009. Good Hope filed this complaint to recover a judgment against Grand Soleil for past due amounts and to enforce its construction lien against Grand Soleil and its property. Grand Soleil never answered the lawsuit. This lawsuit named all of the parties who claimed a construction lien the Hotel Property. At that time, there were fourteen filed construction liens against Grand Soleil and the Hotel Property totaling $3,665.215.[6] Good Hope's original claim was $1,100,380.64; however, it received payment from Grand Soleil in 2010 of $102,296 reducing its claim to $998,084.64. Farmer also received a payment from Grand Soleil in 2010 reducing its claim to $452,000.

21. As of the date of the filing of this case, none of the liens had been paid except for the lien filed by Hotel & Restaurant Supply in the amount of $319,860.20. At some point on or around May 5, 2011, Grand Soleil paid this lien with a loan from United Mississippi Bank. Grand Soleil did not produce any records related to that loan and we have subpoenaed United Mississippi Bank's records for trial.

---

[5] Grand Soleil owes its attorney/corporate representative, Kent Hudson, approximately $220,000 in unpaid legal bills (Depo p. 85).

[6] One lien claimant, Mark D. Wolf Enterprises, appears to have filed its claim in the amount of $533,188.36 twice, thereby reducing the total amount to $3,112,026.70.

9

22. On July 19, 2011, two additional unsecured creditors, Kimbrell Office Supply, Inc. and Natchez Printing Company, joined the petition. Their unsecured claims total $10,981.75

23. To recap, as of the petition date, Grand Soleil had total outstanding claims of approximately $31,250,000, most of which were not generally being paid as they came due.

### III. GRAND SOLEIL'S MOTION SHOULD BE DENIED.

#### A. Good Hope Claim is not subject to a bona fide dispute.

24. The petitioning creditors and their respective claims are as follows:

| Creditor | Amount of Claim |
| --- | --- |
| Good Hope | $998,084.64 |
| Farmer | $452,000.00 |
| Ketco | $12,406.43 |

Grand Soleil does not contest Ketco's claim, of which $6,456.81 are open account invoices that have not been reduced to judgment. Grand Soleil concedes, as it must, that it owes Farmer $452,000 (Depo. p. 58), but does assert that it lacks standing to bring this petition because it has a secured claim. Grand Soleil contests Good Hope's standing to bring this petition and also claims that Good Hope's claim is subject to a bona fide dispute.[7] The petitioning creditors will address this issue first.

25. Grand Soleil asserts that Good Hope's claim is subject to a "bona fide dispute" because even though Good Hope is entitled to a construction lien against Grand Soleil's property,

---

[7]Grand Soleil does not dispute that $998,084.64 is owed to Good Hope for work on the Hotel Property. Depo. p. 49.

"Good Hope is not (and was not) a direct creditor of Grand Soleil." This argument is wrong as a matter of law.

26. Under section 303(b) a petitioning creditor may commence an involuntary petition only if its claim is not contingent and subject to a bona fide dispute. The Fifth Circuit has adopted an objective standard to determine whether a claim is subject to a bona fide dispute. *In Re: Sims*, 994 F. 2d 210 (5th Cir. 1993). Under this standard, the court must "determine whether there is an objective basis for either a factual or a legal dispute as to the validity of the debt." *Id.* at 221. In this proceeding, there is no objective basis to dispute the validity of Good Hope's claim against Grand Soleil.

27. Good Hope entered into a construction contract with Big River Enterprises LLC ("Big River") on March 17, 2007, to perform construction services for the Hotel Property. In the contract, Big River held itself out to be the "owner" of the Hotel Property. Unbeknownst to Good Hope, Big River had transferred title to Grand Soleil via a deed executed on December 4, 2006. (Depo. p. 95 and Exhibit 8 to deposition).[8] Good Hope performed construction work on the project at the direction of Grand Soleil and its authorized agent, Bill Bayba. Bayba is also the managing member of Big River. Without Good Hope and Farmer's work, the hotel would not be operating today. (Depo. p. 93).

28. Good Hope filed a Notice of Contractor's Lien pursuant to Mississippi Code Annotated § 85-7-131 on January 6, 2009. Grand Soleil joined in Good Hope's notice of lien with the following statement:

---

[8]In what can only be described as an effort to trick its material suppliers and contractors, like Good Hope, Grand Soleil did not record this deed until June 7, 2007. This trick obviously does not work. Grand Soleil was originally named Emerald Star Casino-Natchez, LLC.

11

> Grand Soleil-Natchez, LLC has joined in the execution of this Notice of Lien by Contractor to approve the filing of this, to acknowledge the amount owed to Good Hope Construction, LLC and to acknowledge the work that has been provided by Good Hope Construction, LLC on the property described as Exhibit A.

See Exhibit 3 to Deposition Transcript.

29. Pursuant to Mississippi law, a party only has lien rights under Mississippi Code Annotated §85-7-131 if it has a direct contractually relationship with the owner. Specifically, Mississippi Code Annotated § 85-7-135 states that a construction lien under § 85-7-131, "shall exist only in favor of the person employed or with whom the contract is made to perform such labor or furnish such materials or render such architectural service and his assign and when the contractor employment is made by the owner or his agent, representative, guardian, or tenant, authorized, either expressly or implied, by the owner."

30. By acknowledging the validity of lien, Grand Soleil expressly agreed that it had a direct contractual relationship with Good Hope. As such, Grand Soliel owes Good Hope for the work performed at its insistence. There is no objective basis for Grand Soleil to factually or legally dispute the validity of Good Hope's claim. In fact, Mr. Lindsley admitted as much.

> Q. Do you see paragraph 7 of that notice of lien?
>
> A. Yes sir.
>
> Q. It says, "Grand Soleil is joining in the execution of this Notice of Lien by Contractor to acknowledge the amount owed to Good Hope Construction, LLC." Do you see that?
>
> A. Yes, sir.
>
> Q. All right. And then if you will flip to the next page, that's signed by Mr. Bayba on behalf of Grand Soleil. Do you see that?

12

    A.  Yes, sir.

    Q.  So doesn't that indicate that Grand Soleil actually does owe the money?

    A.  Yes, sir.

Depo. p. 47.

  Good Hope's claim is not subject to a bona fide dispute as to liability. Grand Soleil's argument is without merit and should be rejected.[9]

### B. The Petitioning Creditors have standing.

  31.  Grand Soleil further claims that all three petitioning creditors are ineligible creditors because they are secured creditors. Grand Soleil is wrong. Pursuant to section 303(b), a secured creditor may be a petitioning creditor so long as the total unsecured claims exceed $14,475. *In re Allen-Main Associates LTD, Partnership*, 223 B.R. 59, 61(2nd Cir. BAP 1998) ("There is nothing in the Code which prevents a fully secured creditor from filing an involuntary petition. . . . For example, a fully secured creditor may join other eligible unsecured creditors whose claims aggregate at least $10,000 in the filing of an involuntary petition . . ."). In this case, Ketco has open account invoices totaling $6,456.81 and Kimbrell Office Supply and Natchez Printing Company's unsecured claims exceed $9,000.[10]

  32.  Moreover, while it is questionable whether Good Hope and Farmer are fully secured creditors, both Good Hope and Farmer each agree to waive their secured claim, to the extent of $14,425 and thereby remove any question as to their status as petitioning creditors. *In Re: East-West*

---

[9]Further, Grand Soleil actually paid Good Hope for work that was subject to the lien in October of 2010. (Depo. pp. 50-51).

[10]Pursuant to section 303( c) an unsecured creditor with a claim that is not contingent may join in the petition to the same effect as if it filed the petition.

*Associates*, 106 B.R. 767, 771 (S.D. N.Y. 1989) ("A secured creditor may waive all or a part of its secured claim to become an eligible unsecured petitioning creditor under Section 303 (b).")

33. Grand Soleil qualifies for relief pursuant to Chapter 7. The petitioning creditors hold claims that are not contingent and subject to a bona fide dispute which exceed $14,425 more than the value of any liens on property of Grand Soleil securing the claims. By its own admission, Grand Soleil is not generally paying its debts as they come due. As such, this petition is well founded and the motion to dismiss should be denied.

Dated, this 25th day of July, 2011.

>GOOD HOPE CONSTRUCTION, INC., FARMER
>ELECTRICAL SERVICE COMPANY, INC.
>KETCO, INC., KIMBRELL OFFICE SUPPLY, INC.
>AND NATCHEZ PRINTING COMPANY
>
>By: /s/ Jim F. Spencer, Jr.
>    Its Attorney

OF COUNSEL:

Jim F. Spencer, Jr. (MSB # 7736)
Louis B. Lanoux (MSB # 8480)
Watkins & Eager PLLC
Post Office Box 650
Jackson, MS 39205-0650
(601) 965-1900 (p)
(601) 965-1901 (f)
jspencer@watkinseager.com
llanoux@watkinseager.com

L:\1976\35202\P003Response..wpd

## CERTIFICATE OF SERVICE

I, Jim F. Spencer, Jr., hereby certify that I have this day caused to be served by electronic mail a true and correct copy of the **PETITIONING CREDITORS' RESPONSE TO MOTION TO DISMISS PETITION FOR INVOLUNTARY BANKRUPTCY (DK # 34)** to the following counsel of record:

L. Jackson Lazarus - jacklaz@cableone.net
Eileen N. Shaffer - ENSLAW@bellsouth.net

And, I hereby certify that I have this day caused to be mailed via United States mail, postage prepaid, a true and correct copy of **PETITIONING CREDITORS' RESPONSE TO MOTION TO DISMISS PETITION FOR INVOLUNTARY BANKRUPTCY (DK # 34)** to the following counsel of record:

**R. Kent Hudson**
**319 Main Street**
**Natchez, MS 39120**

This 25th day of July 2011.

/s/ Jim F. Spencer, Jr.
Jim F. Spencer, Jr.