**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF MISSISSIPPI**

| | |
|---|---|
| IN RE: | CHAPTER 11 |
| GRAND SOLEIL-NATCHEZ, LLC | CASE NO. 11-01632-NPO |

**MOTION TO (I) ASSUME LEASE AND EXECUTORY CONTRACT, AND
(II) APPROVE SALE OF CERTAIN REAL AND PERSONAL PROPERTY
FREE AND CLEAR OF LIENS, CLAIMS AND INTERESTS**

COMES NOW Grand Soleil - Natchez, LLC, the Debtor and debtor-in-possession (the "Debtor") and files its *Motion to (I) Assume Lease and Executory Contract, and (II) Approve Sale of Certain Real and Personal Property Free and Clear of Liens, Claims and Interests* (the "Motion") pursuant to §§ 105, 363 and 365 of the Bankruptcy Code and Rules 2002, 6004, 6006 and 9014 of the Federal Rules of Bankruptcy Procedure. In support of this Motion, the Debtor represents as follows:

**Introduction**

1. On May 5, 2011, (the "Commencement of the Case"), certain Petitioning Creditors filed a Chapter 7 Involuntary Petition. On August 10, 2011, (the "Petition Date"), an Order for Relief was entered by this Court granting voluntary relief under Chapter 11 of the Bankruptcy Code. [Dkt #43]. Since the Petition Date, the Debtor has continued to operate its business and manage its properties as a debtor-in-possession pursuant to §§1107 and 1108 of the Bankruptcy Code. No committees have been appointed and no request for appointment of a trustee or examiner has been made.

2. This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core proceeding under 28 U.S.C. § 157(b)(2)(M), (N) and (O).

- 1 -

**Background of Proposed Transaction**

3.      The Debtor owns three separate tracts of real property – 1) the "Williams Tract", which is the site of a proposed casino; 2) the "Hotel"; and, 3) "The Briars", a bed and breakfast. All three tracts of real property are located in Natchez, Mississippi.  The subject of this Motion is the proposed sale of "The Briars", including the contents, or personal property contained within "The Briars", (collectively, the "Property").  A legal description of The Briars is attached hereto and incorporated herein as Exhibit "A".

4.      On or about March 6, 2011, the Debtor entered into an executory contract styled *Contract for the Sale and Purchase of Real Estate*, (the "Expired Contract"), including all contents, with Leon and Kristi Atkins (the "Buyers"). See Exhibit "B".  This Expired Contract expired by its terms on March 31, 2011, due to the inability of Debtor to convey merchantable title to Buyers, and the Debtor **does not** seek to assume this expired Contract.  As a part of the Expired Contract, the Debtor previously agreed to pay 4.5%, or $88,875, commission (the "Commission") to Harrington Realty ("Harrington"), the Buyer's Agent.  Therefore, the net purchase price, before deduction of other closing costs, under the Expired Contract was $1,886,125.  The Expired Contract also called for the Buyer to deposit $50,000 with Harrington. When the Debtor could not fulfill the Expired Contract due to title issues, the Buyer, after the expiration of the Expired Contract apparently agreed with Harrington, to deposit the $50,000 earnest money into a joint interest-bearing escrow account with Harrington.

5.      Because of these title issues, the Debtor and the Buyer entered into a lease and executory contract titled *Lease Agreement with Option to Purchase*, (the "Lease"), on May 10, 2011, during the Gap Period after the Commencement of the Case and before the Order for Relief.  The Lease is attached hereto and incorporated herein as Exhibit "C".  This Lease did not

Document      Page 3 of 10

incorporate the terms of the Expired Contract, nor provide for any earnest money or commission to be paid. The Lease was for an initial term of 180 days with a second renewable term for an additional 180 days. Therefore, the Lease and its incorporated executory contract is unexpired and Debtor seeks to assume this Lease and to sell the Property pursuant to the option to purchase incorporated in the Lease. Under the Lease, Buyers have an option to purchase the property for $1,975,000.

6.  Pursuant to the Lease, the Buyers occupy the Property as a residence and also utilize the premises as a "bed and breakfast" operation. The Buyers also have the right under the Lease to any income derived from their operation of the Property.

### Relief Requested

7.  The Debtor has determined that, in order to maximize the value to the Debtor's estate, it is in the best interest of the Debtor to assume the Lease and, pursuant to the option to purchase contained therein, sell the Property.

8.  Furthermore, the Debtor believes that the sale of the Property at this time and pursuant to the terms set forth in the Lease reduces the uncertainties of market conditions and yields the best value and return to all constituencies.

9.  The Property is subject to the following liens:

   a. Deed of Trust in favor of United Mississippi Bank, dated October 31, 2008, and recorded on November 5, 2008, in Book 775 at Page 106, and securing a Note in the amount of $2,500,000;

   b. A proposed Deed of Trust in favor of RJB Financing, LLC, which has not yet been recorded and is subject to approval of a request for Debtor-in-Possession

    financing pursuant to Sec. 364(c), which is the subject of the Debtor's Motion to Obtain Financing filed at Docket No. 120.

c. Deed of Trust and Security Agreement in favor of William Marvin Cato, in the amount of $14,500,000, dated on or about July 15, 2008, and recorded on July 29, 2008, in Book 771, Page 254, but "automatically subordinated" by its terms to all other deeds of trust up to $70,000,000;

d. A federal tax lien, recorded with the Chancery Clerk of Adams County, Mississippi, in the amount of $257,793.48, and for which the Internal Revenue Service has filed a Secured Proof of Claim in the amount of $300,290.15;

e. A Judgment in favor of Multicom, Inc., dated January 27, 2010, and enrolled January 27, 2010, in the principal amount of $48,843.00, plus interest and attorney fees of $8,000.00;

f. A Judgment in favor of Preferred Transport Co. dated April 15, 2010, enrolled April 16, 2010, in the principal amount of $17,210.25, plus interest and all costs;

g. A Judgment in favor of KETO Advertising dated September 23, 2009, enrolled August 3, 2010, in the principal amount of $3,026.55;

h. A Judgment in favor of KETO Advertising dated September 23, 2009, enrolled August 3, 2010, in the principal amount of $2,231.01;

i. A Judgment in favor of MDES dated November 16, 2010, enrolled November 18, 2010, in the principal amount of $1,810.36; and,

  j. A Judgment in favor of Cintas dated January 31, 2011, enrolled February 2, 2011, in the principal amount of $30,851.41, plus interest, costs, and attorney fees.

10. Therefore, the first lienholder on the Property is United Mississippi Bank ("UMB"). UMB's first priority lien exceeds the proposed sales price of $1,975,000. UMB has agreed to the relief requested in this Motion provided all net sales proceeds are paid to UMB.

11. The Debtor has agreed, with the support of UMB, to sell the Property to the Buyer, on the terms and conditions set forth in the Lease, for a Purchase Price of $1,975,000, (the "Transaction").

12. Upon the Closing of the Transaction, all liens, claims, interests and encumbrances in or to the Property will be transferred from the Property and will attach to the proceeds received by the Debtor with the same validity and priority, and to the same extent, as they existed on the Properties prior to Closing. Nothing in this Motion is intended to affect the validity, priority or extent of any party's liens, claims, interests, encumbrances or security interests in the Properties that are to be transferred to the proceeds of the Transaction.

13. The Debtor requests that the Court approve the sale of the Property to the Buyer with no Commission being paid to Harrington and all costs except for prior years' property taxes on the Property, a prorated estimate of the current year's ad valorem taxes on the Property, and Deed Preparation, to be paid by the Buyer.

14. Alternatively, because of the uncertainty regarding the possible Commission claim of Harrington, the Debtor proposes to deposit the balance of the Commission -- $38,875 ($88,875 less $50,000 which is in a separate escrow account) -- into a Debtor-in-Possession escrow account, pending further Order of this Court. The Debtor further requests, as part of this

alternative pleading, an Order from this Court restricting the disbursement of the $50,000 which has been deposited in a separate escrow account in the name of the Buyer and Harrington until further order of this Court.

15. The Debtor will pay, at closing, all proceeds of the Transaction, net of closing costs, and Commission, to UMB, in exchange for a release of UMB's lien on the Property.

16. Following the Closing of the Transaction, the Debtor shall provide to the Office of the United States Trustee closing statements or settlement statements setting forth the proceeds of the Transaction and the disbursements of funds at the Closing.

17. Any Order approving the Transaction shall address the Debtor's compliance with any existing privacy policy concerning the transfer of personally identifiable information pursuant to § 363(b)(1) of the Bankruptcy Code.

18. Therefore, the proposed Transaction is in the best interests of all interested parties, and the bases for the Transaction are consistent with § 363 of the Bankruptcy Code and the sale of assets outside of a Chapter 11 Plan of Reorganization.

### The Transaction Meets the Requirements of 11 U.S.C. § 363

19. The Bankruptcy Code provides under § 363 for the sale of assets outside the ordinary course of business when the decision to do so is based on sound business judgment and is made in good faith. The Fifth Circuit declared in *In re Continental Airlines, Inc.*, 780 F.2d 1223, 1226 (5th Cir. 1986), that, in order to satisfy its fiduciary duty to the debtor, creditors and equity security holders, there must be some business justification for using, selling or leasing the property outside the ordinary course of business." *See also In re Lionel Corp.*, 722 F.2d 1063 (2nd Cir. 1983); *Stephens Industries, Inc. v. McClung*, 789 F.2d 386, 391 (6th Cir. 1986); *In re Ionosphere Clubs, Inc.*, 100 B.R. 670, 675 (Bankr. S.D. N.Y. 1989); *In re Condere Corporation*,

289 B.R. 615, 628-630 (Bankr. S.D. Miss. 1998). This analysis is done on a case-by-case basis. *In re Continental Airlines*, 780 F.2d at 1226.

20. As stated above, the Debtor and its professionals have exercised sound business judgment in determining to sell the Debtor's assets. Due to economic and financial conditions that presently exist and have existed for some time, the Debtor and its professionals believe that the highest and best return to the Debtor's estate is realized by the sale of the Property at this time.

21. The Transaction provides for the sale of the Property free and clear of all liens, claims, interests and encumbrances as provided by § 363(f) of the Bankruptcy Code. To the extent that any party asserts liens against the Property, the Debtor and its professionals submit that the Transaction meets the requirements of § 363(f).

22. The Transaction does not constitute a *sub rosa* plan of reorganization and is therefore not a transaction prohibited by the Bankruptcy Code. *See In re Braniff Airways, Inc.*, 700 F.2d 935, 939-40 (5th Cir. 1983); *In re Continental Airlines*, 780 F.2d at 1227-28. The Transaction neither alters nor restructures the rights of creditors, nor does the Transaction predetermine the rights of creditors under a future plan. *Id.* To the contrary, the Transaction, as described herein, constitutes the mere sale of some of the Debtor's assets.

23. The Lease was negotiated by the Debtor at arms-length, prior to the Order for Relief. Such terms were negotiated between the Debtor and the Buyer without collusion and in good faith as called for under § 363(m) of the Bankruptcy Code.

24. The negotiation of the Lease was conducted in good faith, and the Debtor submits that a sale consummated in connection therewith will have been conducted in good faith. Thus, the Potential Buyer and the Debtor are entitled to the protections of § 363(m).

**Assumption of Unexpired Lease and Executory Contract**

25. The Debtor also requests that it be allowed to assume the Lease.

26. Under § 365 of the Bankruptcy Code, a debtor generally has the power, subject to court approval, to assume or reject executory contracts or unexpired leases to which the Debtor is a party. In judging the propriety of a debtor's decision to reject an executory contract or unexpired lease, most courts, including the Fifth Circuit, have applied a "business judgment" standard. *See Sharon Steel Corp. v. National Fuel Gas Distrib. Corp. (In re Sharon Steel Corp.)*, 872 F.2d 36, 39-40 (3rd Cir. 1989); *Richmond Leasing Co. v. Capital Bank, N.A.*, 762 F.2d 1303, 1309 (5th Cir. 1985); *see also NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 523 (1984) (describing business judgment test as "traditional").

27. The assumption of the Lease is a necessary components of the Transaction, provides substantial benefit to both parties to the Transaction and are justified as an integral part of the sale of the Property.

28. The Debtor submits that the foregoing constitutes adequate assurance of future performance but will provide at the Sale Hearing any further proof required to meet its burden in this regard.

**Conclusion**

29. The Transaction is in the best interests of the Debtor's estate and all of its creditors, and maximizes the value of the Property. Furthermore, the Transaction will have been duly conducted in a fair and reasonable fashion after careful consideration and deliberation. Accordingly, the Transaction described herein comports with all legal requirements of the Bankruptcy Code and Rules and should therefore be approved.

WHEREFORE, PREMISES CONSIDERED, the Debtor requests that the Court enter an Order approving the assumption of the Lease and approving the Transaction free and clear of all liens, claims, and interests, and to approve the disbursement of the proceeds as set forth herein, and grant such other relief as is just and appropriate.

This the 13th day of September, 2011.

    Respectfully submitted,

    GRAND SOLEIL - NATCHEZ, LLC

    By: */s/ John D. Moore*
        JOHN D. MOORE (MB No. 10610)

**Moore & Manhein, LLP**
301 Highland Park Cove, Suite B (39157)
Post Office Box 3344
Ridgeland, Mississippi 39158-3344
601-853-9131
Fax: 601-853-9139
E-Mail: john@johndmoorepa.com

**CERTIFICATE OF SERVICE**

I, John D. Moore, do hereby certify that I have this day caused the above and foregoing pleading to be filed with the Court's ECF system, which electronically served a true and correct copy of this pleading to all parties having entered their appearance and requested electronic notice, including, but not limited to, the following:

Henry G. Hobbs, Jr., United States Trustee
USTPRegion05.JA.ECF@usdoj.gov

Ronald H. McAlpin
Trial Attorney, Office of the U.S. Trustee
ronald.mcalpin@usdoj.gov

Jim F. Spencer jspencer@watkinseager.com
Betty Ruth Fox bfox@watkinseager.com
WATKINS & EAGER, PLLC

Bruce M. Kuehnle, Jr.
kuehnle@bellsouth.net

Eileen N. Shaffer
enslaw@bellsouth.net

Kristina Johnson
kjohnson@watkinsludlum.com

and by First Class US Mail, postage prepaid to:

Guy Bass guybass@bellsouth.net
Paul B. Harrington, Broker natchez3@bellsouth.net
Harringon Realty
600 Washington Street
Natchez, MS 39120

This, the 13th day of September, 2011.

*/s/ John D. Moore*
JOHN D. MOORE